Filed 1/23/14  Frampton v. Baer CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KEVIN FRAMPTON, | 2d Civil No. B245833 |
| | (Super. Ct. No. 1303311) |
| Appellant, Cross-Respondent, | (Santa Barbara County) |
| v. | |
| MERIDITH BAER, | |
| Respondent, Cross-Complainant. | |

This is the second appeal in this matter.  In the first appeal, Kevin Frampton appealed from the judgment entered in favor of Meribear Productions, Inc. (Meribear), dba Meridith Baer & Associates, following a court trial.[1]  Frampton and Meribear sued each other for breach of contract.  The judgment awarded damages to Meribear in the amount of the contract price - $68,000.  In an unpublished opinion (*Frampton v. Baer* (Jan. 17, 2012, B228002), we reversed the $68,000 damages award and remanded the matter for retrial on the amount of damages.  We affirmed in all other respects.

---

[1] Frampton erroneously sued Meribear as "Meridith Baer, individually and dba Meridith Baer & Associates."  The judgment correctly named Meribear as the defendant.

After retrial, the court awarded Meribear damages of $41,480. Frampton appeals from the judgment incorporating this award, and Meribear cross-appeals. We affirm.

*Evidence at Original Trial*[2]

Frampton is a developer of custom homes in Montecito. In the summer of 2008, he put on the market a newly constructed, unfurnished 11,000-square-foot home (the home). To increase its appeal to potential buyers, Frampton hired Meribear to "stage" the home with temporary furnishings. Meridith Baer (Baer) is the founder and owner of Meribear.

On September 22, 2008, the parties entered into a written contract (the contract). In consideration of $68,000, Meribear agreed to provide "for design and decorating services, and the delivery, installation and rental of furniture, antiques, fine art, linens, rugs, lighting, temporary window treatments, potted plants and/or other furnishings ('the Inventory')." The contract required Frampton to pay Meribear $40,000 upon its signing and $28,000 upon completion of the staging on "approximately October 6, 2008." Frampton used a credit card to pay the $40,000 deposit. The total payment of $68,000 would cover both the staging and the lease of the Inventory for a six-month period beginning on October 6, 2008, and ending on April 5, 2009 (the free-rental period). If Frampton wanted to continue to lease the Inventory after the free-rental period, the contract required him to pay monthly rent of $6,480. At any time, Frampton could cancel the lease by giving a 15-day written notice.

Baer estimated that it would take from five to seven truckloads of Inventory to stage the home. On September 28, 2008, Frampton inspected the first truckload delivered to the home. He testified: "I was shocked, dismayed, confused. The

---

[2] The summary of the evidence presented at the original trial, as well as the procedural history through the conclusion of that trial, is based on pages two through six of our opinion in the first appeal.

condition of the material was chipped, broken, damaged, worn, old." Frampton complained to Baer.

On September 29, 2009, Baer drove to the home to try to sort things out. When she arrived, one of her trucks was there to deliver a second truckload of Inventory. Baer's workers told her that Frampton would not let them unload the truck. Baer met with Frampton and arranged for the unloading of the second truckload. She agreed to remove the pieces that Frampton found unsatisfactory. Since two truckloads of Inventory had been delivered, not all of the unsatisfactory pieces could fit into the single truck that was there. The truck left with a full load, and Baer told Frampton that the remaining unsatisfactory pieces would be removed by the truck that would deliver the third truckload of Inventory.

On September 30, 2008, Frampton emailed Baer that, after inspecting the second truckload of Inventory, he felt "strongly that we need to stop the process at this point." Frampton asked Baer when her "truck can pick the items up." Baer interpreted the email as meaning that Frampton was " 'not going forward with the staging.' "

On October 3, 2008, Baer discovered that Frampton had canceled the $40,000 credit card payment made when the contract was signed. Later that same day, Meribear's counsel emailed and faxed a letter to Frampton. Counsel wrote: "Unfortunately, you have chosen to interfere with [Meribear's] ability to complete the job and accordingly . . . we are hereby declaring you in default and we are accordingly terminating the contract."

On October 6, 2008, Meribear removed its furnishings from the home. The furnishings "went into other jobs." In November 2008 approximately 65 to 70 percent of the Inventory was used to stage a home in Hot Springs. This staging was still in place at the time of trial.

*Frampton's Complaint and Meribear's Cross-Complaint*

In October 2008 Frampton filed a complaint for breach of contract against Meribear. Frampton claimed that Meribear had breached the contract by "twice

3

deliver[ing] furniture and furnishings that did not match the quality or characteristics agreed to be provided." Meribear filed a cross-complaint against Frampton for breach of contract.

*Trial Court's Decision*

The trial court decided that Meribear had not breached the contract. On the other hand, it concluded that Frampton had "materially breached the Contract by refusing to allow Meribear to complete the staging and by refusing to pay Meribear the contract price for its services." The court awarded Meribear damages "in the amount of the Contract's bargained for price for the staging fees, $68,000."

*First Appeal*

Frampton appealed from the judgment; respondent did not cross-appeal. In reversing the $68,000 damages award, we concluded that "Meribear was entitled to recover its lost profits and the costs that it had actually incurred, not the full contract price." (Slip Op., p. 13.) We reasoned: "When Frampton prevented Meribear from completing the staging of the home, Meribear's performance under the contract was not substantially complete. Baer estimated that it would take from five to seven truckloads of Inventory to stage the home. . . . Meribear had delivered two truckloads and had removed one truckload of Inventory. Thus, to complete the staging, Meribear needed to deliver four to six more truckloads of inventory. Furthermore, the contract price included a six-month lease of the Inventory. The lease was supposed to begin on October 6, 2008, the same day that Meribear removed the remainder of the Inventory from the home. [¶] . . . During the six-month period that the Inventory was supposed to be leased to Frampton for the contract price, Meribear mitigated damages by using the Inventory to stage other homes." (Slip Op., p. 14.) We remanded the matter "for retrial on the amount of damages." (Slip Op., p. 15.)

*Evidence and Argument at Retrial*

At the retrial of the damages issue, Baer testified that "90 percent of the job was done before [Meribear] started to install [the Inventory inside the home]." In

4

connection with the project, Baer claimed that Meribear had paid the following "salaries": $6,800 to Brett Baer as commission for bringing Frampton's business to Meribear; $6,800 to Patti Pierce, the project designer; $2,500 to Diana Green, another designer; $600 to Anna Viola for 30 hours of office work at $20 per hour; $900 to Ianne Diwa, Meribear's bookkeeper, for 30 hours of work at $30 per hour; $800 to Emily Baker, an art expert, for 40 hours of work at $20 per hour; $900 to Negin Dumoulin, Meribear's attorney; and $7,650 to Meribear's crew for 510 hours of work at $15 per hour. Baer explained that the crew pulled the Inventory from Meribear's warehouse, wrapped it, transported it to the home, installed it on the premises, and returned it to the warehouse after the termination of the contract. Baer personally worked 70 hours on the project at $400 per hour for a total of $28,000. Meribear had not yet paid her the $28,000.

Baer testified that Meribear had incurred travel expenses of $6,000 plus an additional expense of $2,500 for moving some of Frampton's personal furnishings from his residence to the home. Meribear's overhead was $5,000.

Based on Baer's testimony, Meribear's total cost for the project was $68,450, i.e., $450.00 more than the contract price. Meribear did not produce any documentary evidence in support of its alleged expenses.

The parties stipulated that the home was sold in May 2012. Meribear argued that, if Frampton had not breached the contract, "the staging would have been successful . . . and . . . would have continued until at least May of 2012 when the house was sold." The free rental period ended on April 5, 2008. For the 37 months from that date until May 2012, Meribear maintained that it was entitled to recover its "lost profits" at the contractual rent of $6,480 per month for a total of $239,760. In view of its alleged costs of approximately $68,000, Meribear requested damages of $307,760 ($239,760 + $68,000 = $307,760).

5

*Trial Court's Decision on Retrial*

The trial court filed an 11-page document entitled "Decision." It found that Baer was not a credible witness and that her alleged expenses "seemed very significantly overstated." The court continued: "[T]he contract was signed on 9/22/08 and [Frampton's] breach was before 10/2/08; the Court of Appeal appears to have correctly assumed that the contract price overstated the actual damages on this very short contract; that is to say the damages should have been less than the $68,000 to meet the particular facts of this contract; on the other hand there was the necessity to pay salaries and some rental sum should [be] permitted, particularly when the fact is that a lot of the work is done early on." The court awarded Meribear damages of $41,480, consisting of $35,000 for "salaries" and $6,480 for one month's rental of the Inventory. The court awarded no damages for lost profits.

FRAMPTON'S APPEAL

*Trial Court's Alleged Failure to Follow the Law of the Case*

The rules of law established on matters properly presented in the first appeal are the law of the case, and the trial court was required to follow these rules in its retrial of the damages issue. (*Lucky United Properties Investments, Inc. v. Lee* (2013) 213 Cal.App.4th 635, 651.) Frampton contends that the trial court failed to follow the rule that "Meribear was entitled to recover its lost profits and the costs that it had actually incurred, not the full contract price." (Slip Op., p. 13.) Frampton argues that the trial court "applied its own 'common sense' to make an 'appropriate' award." His argument is based on the following excerpt from the trial court's decision: "The law is clear; no fixed standard exists for deciding the amount of the damages; the fact finder must use its judgment to decide a reasonable amount based on the evidence and common sense. In this case the damage numbers sought by Meribear have been overstated and the court has used its common sense based upon the evidence to set sums that are appropriate."

6

The above excerpt does not show that the trial court disregarded the law of the case that "Meribear was entitled to recover its lost profits and the costs that it had actually incurred, not the full contract price." (Slip Op., p. 13.) We presume that the court was aware of the law of the case doctrine and did not violate it. (*Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956.) The court used its "common sense based upon the evidence" to determine Meribear's lost profits, if any, and the costs that it had actually incurred.

*Trial Court's Alleged Failure to Exclude*

*Baer's Testimony for Discovery Violation*

The trial court overruled Frampton's objection that Baer's testimony concerning Meribear's costs was based on "documents that she's reviewed that she did not bring or produce in discovery." Frampton argues that, because of this discovery violation, the trial court should have excluded Baer's testimony.

Frampton has failed to carry his burden of establishing trial court error. He has not cited any portion of the record showing that during discovery Meribear was asked to produce, but did not produce, the documents in question and that Frampton filed a motion to compel discovery. (See Cal. Rules of Court, rule 3.1348(a) ["The court may award sanctions under the Discovery Act in favor of a party who files a motion to compel discovery"].) Nor has Frampton cited any legal authority requiring the court to exclude Baer's testimony. " 'A judgment or order of the lower court is presumed correct.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived. [Citation.]" (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) "When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion

7

by the reviewing court is unnecessary.  [Citations.]"  (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699 -700.)

*Best Evidence Rule*

Frampton contends that the trial court erroneously overruled his objection that Baer's testimony about Meribear's costs violated the former "best evidence rule," now the secondary evidence rule (Evid. Code, § 1520 et seq.), because she had failed to bring into court the documents upon which her testimony was based.  The secondary evidence rule provides:  "Except as otherwise provided by statute, oral testimony is not admissible to prove the content of a writing."  (***Id***., § 1523, subd. (a).)

"We review a trial court's rulings on the admission and exclusion of evidence under the abuse of discretion standard.  [Citation.]"  (*People v. Thompson* (2010) 49 Cal.4th 79, 128.)  "A trial court abuses its discretion only where its action is clearly wrong and without reasonable basis.  [Citation.]"  (*Pipefitters Local No. 636 Defined Benefit Plan v. Oakley, Inc.* (2010) 180 Cal.App.4th 1542, 1548.)

The trial court did not abuse its discretion.  The secondary evidence rule applies only when secondary evidence is offered to prove the content of a writing.  Baer's testimony was offered to prove the costs that Meribear had incurred in connection with the staging of the home, not to prove the content of any writing.

*Hearsay*

Frampton maintains that, in violation of the hearsay rule, the trial court erroneously admitted Meribear's Exhibit 80, a one page document that summarized its costs.  Baer prepared Exhibit 80, and she referred to the document during her testimony  The trial court stated that Exhibit 80 "will be admitted just as if she wrote it on the board . . . on the theory that it's a method to preserve the witness's testimony."

The admission of Exhibit 80 did not violate the hearsay rule.  Evidence Code section 1200, subdivision (a) defines "hearsay evidence" as "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered

8

to prove the truth of the matter stated."  Exhibit 80 was not an out-of-court statement; it was an integral part of Baer's testimony.  She discussed the costs listed in the exhibit and explained how she had calculated them.  Furthermore, the trial court did not admit Exhibit 80 to prove the truth of the matters stated therein; it admitted the exhibit as "a method to preserve the witness's testimony."

*Sufficiency of the Evidence*

Frampton asserts that the evidence is insufficient to support the trial court's damages awards of $35,000 for salaries and $6,480 for one month's rental of the inventory.  "[W]e apply the familiar substantial evidence standard of review: We view all of the evidence in the light most favorable to the judgment, drawing every reasonable inference and resolving every conflict to . . . support the judgment. [Citation.]"  (*Jonkey v. Carignan Const. Co.* (2006) 139 Cal.App.4th 20, 24.)  "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value.  [Citation.]"  (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)  " 'The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record.  [Citation.]' "  (*In re Estate of Young* (2008) 160 Cal.App.4th 62, 76.)

Substantial evidence supports the damages award of one month's rental.  According to the contract, the rental value of the Inventory was $6,480 per month.  The trial court could reasonably infer that, as a result of Frampton's breach of the contract, the Inventory sat idle for one month without generating any rental income.  In our previous opinion we noted that in November 2008, one month after Frampton's breach, approximately 65 to 70 percent of the Inventory was used to stage a home in Hot Springs.  (Slip Op., p. 5)

Frampton argues that there is no reasonable basis for the rental damages award because the contract provided that he would not pay rent for the first six months of the staging.  The argument is devoid of merit.  The free rental period applied only if

9

Frampton complied with the contract, and he breached it without paying any portion of the $68,000 contract price.

Substantial evidence also supports the damages award of $35,000 for "salaries." Baer testified that "90 percent of the job was done before [Meribear] started to install [the Inventory inside the home]." She also testified that Meribear had paid $26,950 in "salaries" and that it owed her $28,000 for her own services.

Frampton contends that we should reject Baer's testimony concerning "salaries" because it "was <u>untrustworthy</u> at best." He requests that we consider Baer's " 'credibility' by comparing her 'statements previously made [at the original trial],' with the inconsistent evidence given in this proceeding [the retrial] and then find that there is <u>no</u> substantial evidence to support an award [of damages for salaries]." Frampton misunderstands the role of an appellate court. "We do not retry cases on appeal . . . ." (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1276.) "The trier of fact determines the credibility of witnesses, weighs the evidence, and resolves factual conflicts. We cannot reject the testimony of a witness that the trier of fact chooses to believe unless the testimony is physically impossible or its falsity is apparent without resorting to inferences or deductions. As part of its task, the trier of fact may [as it did here] believe and accept as true only part of a witness's testimony and disregard the rest. On appeal, we must accept that part of the testimony which supports the judgment. [Citation.]" (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830.)

MERIBEAR'S CROSS-APPEAL

*Meribear Cannot Recover More than the Contract Price of $68,000*

Meribear argues that "it is entitled to damages of $307,760, which this Court is empowered to award, without a second retrial." Meribear, however, is precluded from seeking damages greater than $68,000, the amount awarded in the original trial, because it did not cross-appeal from the original $68,000 judgment. "[I]t is the general rule that a respondent who has not appealed from the judgment may not urge error on appeal. [Citations.] . . . Here, without [cross-appealing from the original $68,000

10

judgment], respondent seeks not to save the judgment but to overthrow it. This cannot be done; we will not review [Meribear's] contentions of error. [Citations.]" (*California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7.) Furthermore, since it is the law of the case that Meribear was not entitled to recover the contract price of $68,000 (Slip Op., pp. 13-14), it is also the law of the case that Meribear cannot recover more than the contract price.

In any event, Meribear's alleged entitlement to damages greater than $68,000 is based on speculation: if Frampton had not breached the contract, he would have leased the Inventory at $6,480 per month from the end of the free rental period until the home was sold in May 2012, even though he had no obligation to do so. " ' "It is fundamental that [contract] damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." ' [Citation.]" (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 473, disapproved on another ground in *Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 352, fn. 17; see also Civ. Code, § 3301 ["No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin"].)

*Substantial Completion of Performance*

At the retrial Baer testified that Meribear had completed 90 percent of the work before it started to install the inventory inside the home. In view of this testimony, Meribear contends that it is entitled to recover the full contract price of $68,000 because "it did, in fact substantially complete its work under the contract." But it is the law of the case that, "[w]hen [Frampton] prevented Meribear from completing the staging of the home, Meribear's performance under the contract was not substantially complete." (Slip Op., p. 14.)

*Lost Volume Seller*

Meribear contends that the trial court erroneously concluded that it was not a lost volume seller. The lost volume seller doctrine applies to the sale of goods. Pursuant to this doctrine, if the buyer breaches the sales contract and the seller resells

11

the goods at a profit, the seller is entitled to recover its anticipated profit from the breaching buyer if it proves "that had the breaching buyer performed, the seller would have realized profits from two sales. [Citation.]" (*National Controls, Inc. v. Commodore Bus. Machines, Inc.* (1985) 163 Cal.App.3d 688, 697; see also *Teradyne, Inc. v. Teledyne Industries, Inc.* (1st Cir. 1982) 676 F.2d 865, 868, fns. omitted ["it is universally agreed that in a case where after the buyer's default a seller resells the goods, the proceeds of the resale are not to be credited to the buyer if the seller is a lost volume seller - that is, one who had there been no breach by the buyer, could and would have had the benefit of both the original contract and the resale contract"].)

Meribear maintains that it qualifies as a lost volume seller because if Frampton had not breached the contract and had leased the Inventory for the six-month free rental period, Meribear would not "have turned down work [during this period] because of the Frampton staging." Accordingly, Meribear asserts that its "damages should not be reduced even if Meribear re-deployed certain of its inventory in other homes during the time the inventory would have been used in the Frampton home had Mr. Frampton not breached the contract."

The trial court concluded, and we agree, that the lost volume seller doctrine does not apply to Meribear because "[t]hat is a doctrine for dealings between merchants in the sale of goods, in Division 2 of the UCC . . . ." (See Cal. U. Com. Code § 2708, subd. (2); 4 Witkin, Summary of Cal. Law (10th ed. 2005) Sales, § 191, p. 170 ["When a buyer repudiates a fixed price contract to purchase goods, U.C.C. 2708(2) permits a seller to recover lost profits upon establishing that he or she is a 'lost volume' seller, i.e., a seller who would have made the sale to a third party regardless of the buyer's breach"].)

Even if the lost volume seller doctrine had applied to Meribear, substantial evidence would have supported the trial court's finding that Meribear had failed to prove its entitlement to an award for lost profits. According to Baer's testimony, the cost of performing the contract exceeded the $68,000 contract price. Baer testified

12

that Meribear had expected that "the profit in the project would come from the monthly rental[]" for the Inventory that Frampton would pay after the expiration of the free rental period. But Frampton had no obligation to lease the Inventory after that date.

*Disposition*

The judgment is affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

13

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____


David W. Magnusson; Haws, Record & Magnusson, for Appellant and Cross-Respondent..


Leviton Law Group, Stuart L. Leviton, for Respondent and Cross-Appellant.